# VIRGINIA:

In the Court of Appeals of Virginia on Friday the 14th day of November, 2014.

Troy Terrell Henry, Appellant,

against     Record No. 0549-14-4
                Circuit Court No. CF12000322

Commonwealth of Virginia,                                                                         Appellee.

From the Circuit Court of the City of Alexandria

Per Curiam

This petition for appeal has been reviewed by a judge of this Court, to whom it was referred pursuant to Code § 17.1-407(C), and is denied for the following reasons:

After two days of hearing evidence and argument, a jury found appellant guilty of racketeering; feloniously taking, persuading, encouraging, or causing Amber Miller to enter a bawdy place; and receiving money or other valuable things from the earnings of Amber Miller engaged in prostitution. Appellant filed a motion to set aside the verdict, which the trial court denied. Appellant was sentenced to a total of twenty-seven years in prison, plus an additional three years that were suspended.

I. Appellant argues that the trial court erred in denying his motion for mistrial because "the Commonwealth elicited prejudicial testimony of a prior bad act" of appellant.

At a motions hearing on October 31, 2013, appellant asked the trial court to prohibit the Commonwealth from "introducing evidence of any prior acts of violence or assaultive behavior alleged against [him] by the witnesses in this case . . . ." The trial court held that the motion was premature and overruled the motion *in limine*, without prejudice. The trial court stated that appellant could object at trial, if such evidence was offered.

RESPONDENT'S EXHIBIT 3

At the trial, Amber Miller testified about an assault that occurred in California in January 2010.[1] She said that she was sexually assaulted by another man, not appellant. She asked appellant to take her to the hospital, and he refused. Appellant tried to clean her up himself and then "forced her to go back out to the track." Appellant objected to Ms. Miller's testimony.[2] The trial court overruled his objection and held the testimony was relevant because it showed the relationship between appellant and Ms. Miller and "how he was able to convince her to do what she did go and do."

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted).

"As a general rule, evidence that shows or tends to show crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving that the accused committed or likely committed the particular crime charged." Morse v. Commonwealth, 17 Va. App. 627, 631, 440 S.E.2d 145, 148 (1994) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)). However, "[w]ell established exceptions to the general rule of exclusion of other bad acts evidence apply where the evidence is relevant to show some element of the crime charged." Id. (citing Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985)). The exceptions include evidence that may be relevant:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

Sutphin, 1 Va. App. at 245-46, 337 S.E.2d at 899.

---

[1] The indictment for racketeering included dates from February 10, 2010 to August 19, 2011.

[2] Contrary to the Commonwealth's argument, appellant preserved his argument with his objection to Ms. Miller's testimony, his motion for a mistrial based on her testimony, and then his renewal of his motion for a mistrial. He also presented his argument to the trial court in his motion to set aside the verdict.

-2-

During the trial, the Commonwealth argued that Ms. Miller's testimony did not include any "bad acts" on the part of appellant because he was not the person who committed the assault; instead, the evidence proved that he would not take Ms. Miller to the hospital. Appellant argued that his attempts of cleaning up Ms. Miller after the assault could be construed as an assault. He argued that the evidence was prejudicial. The trial court concluded that the testimony described the relationship between appellant and Ms. Miller, which was necessary to prove for the racketeering charge. As in Morse, Ms. Miller's testimony fell "within the exception allowing evidence of prior bad acts to show the conduct and feeling of the accused toward the victim and the prior relations between the parties to prove an element of the offense charged." Morse, 17 Va. App. at 632, 440 S.E.2d at 148. Accordingly, the trial court did not err in denying appellant's motion.

II. Appellant argues that the trial court erred in denying his "motion to strike" because "the Commonwealth failed to provide necessary exculpatory material in a timely manner."[3] Appellant contends the Commonwealth failed to tell appellant that Ms. Miller worked for another pimp prior to appellant. Appellant also asserts that the Commonwealth did not tell him until the morning of trial that Ms. Miller continued to work as a prostitute after her relationship with appellant ended.

Prior to trial, appellant filed a motion requesting all Brady information, including whether the complaining witnesses were still involved in prostitution. Prior to trial, the Commonwealth provided to appellant reports documenting the FBI interviews with Ms. Miller. On the morning of trial, the Commonwealth informed appellant that Ms. Miller continued to engage in prostitution. Appellant moved for a mistrial because he was not provided this information earlier. The trial court denied the motion. The trial court acknowledged that appellant asked for the information and that the Commonwealth did not give it to him. However, the trial court held that the information went to impeachment and credibility issues and that the error "has been cured by [appellant's] cross-examination."

---

[3] Appellant made a motion for a mistrial, not a motion to strike. Throughout this part of his petition for appeal, he refers to the motion for mistrial. The Commonwealth was aware of the motion for mistrial. Given the particular circumstances here, we will consider that appellant simply misstated his assignment of error and base our analysis on his motion for a mistrial.

-3-

The Commonwealth is required to provide a defendant exculpatory evidence, including evidence which impeaches the credibility of a prosecution witness.

> "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).
>
> Evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. at 280. However, it is not necessary to demonstrate "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." A conviction must be reversed if the accused shows "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435.

Coley v. Commonwealth, 55 Va. App. 624, 631, 688 S.E.2d 288, 292 (2010) (citations omitted).

There is no Brady violation where defense counsel knew about undisclosed exculpatory evidence "in sufficient time to make use of [it] at trial." Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546 (1987). Cf. Moreno v. Commonwealth, 10 Va. App. 408, 419, 392 S.E.2d 836, 843 (1990) (where accused receives information in time to use it effectively at trial, and is not otherwise able to demonstrate prejudice, he has not been deprived of fair trial). "This principle applies without regard to when the prosecution was or should have been 'aware of the information.'" Commonwealth v. Tuma, 285 Va. 629, 636, 740 S.E.2d 14, 18 (2013) (quoting Read, 233 at 564, 357 S.E.2d at 546).

The trial court did not err in denying the motion. The Commonwealth provided the information to appellant with sufficient time for him to use it and cross-examine the witnesses at trial. Appellant argues that his pre-trial investigation and preparation would have differed if he had known the information prior to trial. However, appellant did not ask for a continuance once he learned of the information. The record proves that appellant was not prejudiced.

III. Appellant argues that the trial court erred in denying his motion to strike because "the Commonwealth failed to prove the existence of an enterprise beyond a reasonable doubt." Appellant argues that the evidence was insufficient to prove that he was guilty of racketeering. He contends the "Commonwealth failed to prove that there were three people in control of the criminal activity" and that "there were three people associated with the criminal activity for any substantial period of time."

"It shall be unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through racketeering activity." Code § 18.2-514(C). According to Code § 18.2-513, "'[e]nterprise' includes any of the following: sole proprietorship, partnership, corporation, business trust, criminal street gang; or other group of three or more individuals associated for the purpose of criminal activity."

"[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009) (citing United States v. Turkette, 452 U.S. 576 (1981)). "Members of the group need not have fixed roles; different members may perform different roles at different times." Id. "While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." Id.

Appellant argues that the Commonwealth's evidence proved that only two people, appellant and Ms. Miller, were "consistently involved in the alleged prostitution ring." In order for there to be an enterprise, there has to be at least three people.

The Commonwealth provided evidence that there were numerous others, besides appellant and Ms. Miller, involved in the enterprise. Cynthia Orr testified that she worked as a prostitute for appellant in the summer of 2011. There also was evidence about other prostitutes who worked with them, including JoJo Shipp, Janelle Stein, a woman named "Dee Dee," and other women whose street names were "Cream," "Kim," and "Diamond." "Although the faces in the group may have changed, there was substantial evidence

-5-

of a structure within the group within which the various associates operated according to their specific function . . . ." United States v. Tillett, 763 F.2d 628, 631 (4th Cir. 1985).

The trial court did not err in denying the motion to strike because the evidence was sufficient to prove beyond a reasonable doubt that appellant was part of an enterprise and guilty of racketeering.

IV. Appellant argues that the trial court erred in denying his motion to dismiss the indictments because "the Commonwealth violated [his] right to a speedy trial."

On October 9, 2012, a grand jury directly indicted appellant on charges of racketeering, encouraging a person to enter a bawdy house, and pandering. In December 2012, appellant was sentenced to prison in the United States District Court for the Middle District of Florida. By letter dated March 23, 2013, the classification officer advised the Commonwealth's Attorney in Alexandria that appellant wished to dispose of the Virginia charges and requested that "action be taken under Article III of the IADA." This letter was not received until June 14, 2013. In April 2013, the Commonwealth filed a Petition for a Writ of Habeas Corpus Ad Prosequendem, and the trial court entered an order on April 8, 2013 directing the warden to release appellant to the Virginia authorities "on or before June 1st, 2013." On May 6, 2013, the Commonwealth filed a Request for Temporary Custody pursuant to the Interstate Agreement on Detainers (IAD). On July 24, 2013, appellant was transported to Alexandria, and on July 25, 2013, he was advised of his charges and appointed counsel.

On August 2, 2013, the trial court continued the case until August 15, 2013 in order to set the trial date. On August 15, 2013, the trial court continued the case to September 5, 2013 for a motion for jury election and scheduled a jury trial on October 1, 2013. On September 5, 2013, the trial court continued the case to September 19, 2013 for a motion for jury election and noted that a jury trial was scheduled for October 1, 2013. On September 19, 2013, the trial court continued the jury trial to November 25, 26, and 27, 2013. Appellant admits that his counsel agreed to the November trial dates. On October 4, 2013, appellant filed his motion to dismiss the indictments for violations of speedy trial and the IAD. The Commonwealth

filed a motion in opposition. On October 10, 2013, the trial court heard argument and denied appellant's motion.

### *Interstate Agreement on Detainers*

> The time limitations of the IAD vary depending on who initiates the prisoner's transfer for trial in the receiving state. Under Article IV, if the receiving state requests custody of the prisoner, the receiving state must begin prosecution within 120 days from the day the prisoner arrives in the receiving state. Under Article III, if the prisoner requests final disposition of his detainer and complies with other provisions of the IAD, prosecution in the receiving state must commence within 180 days from the date the prisoner gives proper notice.

Yiaadey v. Commonwealth, 29 Va. App. 534, 536-37, 513 S.E.2d 446, 447-48 (1999).

Appellant requested disposition of the charges. The Commonwealth received his request on June 14, 2013. Since appellant's trial began on November 25, 2013, he was within the 180 days as required under Article III of the IAD.

Appellant further argues that pursuant to Article IV of the IAD, he was supposed to be tried within 120 days. Appellant contends the Commonwealth requested custody of appellant when it sent the Writ of Habeas Corpus Ad Prosequendem. However, Writs of Habeas Corpus Ad Prosequendum are not considered detainers within the meaning of the IAD. United States v. Mauro, 436 U.S. 340, 349, 361 (1978); see also Jiron-Garcia v. Commonwealth, 48 Va. App. 638, 633 S.E.2d 744 (2006). Therefore, Article IV does not apply.

Lastly, we note that appellant agreed to the trial date. In New York v. Hill, 528 U.S. 110 (2000), the Supreme Court of the United States held that defendant's counsel could waive defendant's speedy trial rights under the IAD if she agreed to a court date outside of the time deadline. Since appellant's counsel agreed to the November 25, 2013 court date, appellant's speedy trial rights were waived.

### *Statutory speedy trial rights*

Appellant argues that the April 8, 2013 order was not followed, since appellant was not brought to Virginia by June 1, 2013. He contends that his speedy trial "clock" should commence at that time because the trial court ordered him to be in Virginia by that date. According to appellant, pursuant to Code

-7-

§ 19.2-243, his trial should have started no later than November 1, 2013, which was five months after his arrest. Since his trial commenced on November 25, 2013, he asserts that his speedy trial rights were violated.

However, as appellant admitted at the October 10, 2013 hearing, he agreed to the November 25, 2013 court date. Code § 19.2-243 provides for several exceptions to the rule that a trial should commence within five months after a defendant's arrest. One of the exceptions is when the defendant or his counsel requests a continuance or concurs in a continuance or fail to make a timely objection to a motion for a continuance. See Code § 19.2-243(4). "When the triggering event occurs – such as when the defendant or his counsel agrees either to a continuance or to an original trial date outside the parameters of Code § 19.2-243 or fails to object to same – the statutory time limit is tolled." McCray v. Commonwealth, 44 Va. App. 334, 342-343 (2004) (citing Commonwealth v. Hutchins, 260 Va. 293, 297-98, 533 S.E.2d 622, 625 (2000)).

According to the argument at the October 10, 2013 hearing, the Commonwealth offered trial dates in October, but they were "not optimal" for appellant's counsel. Appellant's counsel agreed to the November 25, 26, and 27, 2013 court dates. Accordingly, appellant waived his right to a speedy trial pursuant to Code § 19.2-243.

V. Appellant argues that the trial court erred in denying his motion to empanel a new venire because he "was denied his constitutional right to a jury composed of a fair cross-section of the community." Appellant is black, and he was convicted by an all-white jury. There were thirty-two members of the venire. All were white, except for Juror 31 who was black. Appellant argues that African-Americans were under-represented in his venire and that the venire did not represent a fair cross-section of the community.

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979); see also Simpson v. Commonwealth, 20 Va. App. 174, 177-78, 455 S.E.2d 749, 751 (1995).

-8-

Appellant met the first requirement, since blacks are a "distinctive" group in the community. Simpson, 20 Va. App. at 178, 455 S.E.2d at 751. Appellant stated that according to 2010 census data for Alexandria, 22.3% of those responding listed themselves as black or African-American. He argues that African-Americans were under-represented in his venire, since only one person was black. Appellant then cites one circuit court case in which the trial court dismissed a jury because there was an all-white venire and a black defendant. Appellant acknowledges that the jury commissioners use random selection techniques to create a master jury list.

> The Supreme Court has consistently adhered to the view that there is no requirement that a petit jury actually chosen must mirror the racial balance of the community. Further, no litigant is entitled to a jury of any particular composition. All that is required is a fair selection system which does not systematically exclude any distinctive group in the community. Taylor v. Louisiana, 419 U.S. 522, 538 (1975). In order to make out a prima facie case of systematic exclusion, a litigant must show consistent under-representation of a distinctive group on juries in the community over a period of time. Such under-representation in a particular case is not sufficient. See Castaneda v. Partida, 430 U.S. 482, 494 (1977).

Watkins v. Commonwealth, 238 Va. 341, 347, 385 S.E.2d 50, 53 (1989).

Appellant cited one instance in which the trial court dismissed a jury because of an all-white venire. Appellant did not prove that there was a "consistent" under-representation of blacks on juries in Alexandria. He also argued that African-Americans were under-represented in the voter registration lists and driver's license lists from which the jury commissioners select names for the master jury list. However, as appellant notes, the voter registration lists and driver's license lists are not the only sources of names from which the jury commissioners derive their potential jurors. They also may use "city and county directories, telephone books, personal property tax rolls, and other such lists as may be designated and approved by the chief judge of the circuit . . . ." Code § 8.01-345. Appellant failed to prove that Alexandria did not use a fair selection system and that African-Americans were systematically excluded from the master jury list.

Accordingly, the trial court did not err in denying appellant's motion because the jury was a fair cross-section of the community.

VI. Appellant argues that the trial court erred in denying his motion to strike because "the Commonwealth failed to prove the transfer of earnings by Ms. Miller to [appellant] during the period of the indictment in the city of Alexandria beyond a reasonable doubt."

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (citations omitted).

"Any person who shall knowingly receive any money or other valuable thing from the earnings of any male or female engaged in prostitution, except for a consideration deemed good and valuable in law, shall be guilty of pandering, punishable as a Class 4 felony." Code § 18.2-357.

Appellant argues that the evidence was insufficient to prove that Ms. Miller gave appellant money that she earned from prostitution between February 1, 2011 and August 19, 2011. Appellant questions Ms. Miller's testimony and whether she sufficiently identified where or when her earnings from prostitution were given to appellant.

The Commonwealth presented Ms. Miller's testimony that she engaged in prostitution in Alexandria and gave her earnings to appellant. There also was photographic evidence proving that appellant was in Alexandria and that he held money that was earned by Ms. Miller for her acts of prostitution in Alexandria.

The jury had the opportunity to see and hear the witnesses, and it found Ms. Miller to be credible. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted).

The trial court did not err in finding that the evidence was sufficient to convict appellant of violating Code § 18.2-357.

This order is final for purposes of appeal unless, within fourteen days from the date of this order, there are further proceedings pursuant to Code § 17.1-407(D) and Rule 5A:15(a) or 5A:15A(a), as appropriate. If

-10-

appellant files a demand for consideration by a three-judge panel, pursuant to those rules the demand shall include a statement identifying how this order is in error.

It is ordered that the Commonwealth recover of the appellant the costs in this Court, which costs shall include a fee of $400 for services rendered by the Public Defender on this appeal, in addition to counsel's necessary direct out-of-pocket expenses, and the costs in the trial court.

This Court's records reflect that the Office of the Public Defender for the City of Alexandria is counsel of record for appellant in this matter.

Costs due the Commonwealth
  by appellant in Court of
  Appeals of Virginia:

      Public Defender     $400.00 plus costs and expenses

A Copy,

Teste: *Cynthia L. McCoy*
Clerk