## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

TROY TERRELL HENRY,      )
                    )
    Petitioner,        )
                    )
v.                  )      Civil Action No. 3:17CV03–HEH
                    )
VIRGINIA DEP'T OF CORRECTIONS, )
                    )
    Respondent.      )

F I L E D
FEB 2 3 2018
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## MEMORANDUM OPINION
### (Granting In Part Motion to Dismiss)

Troy Terrell Henry, a federal inmate proceeding *pro se*, brings this petition

pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). In his § 2254 Petition,

Henry challenges his convictions in the Circuit Court for the City of Alexandria, Virginia

("Circuit Court") of racketeering, enticing a prostitute, and receiving money or earnings

of a prostitute. (*See* ECF No. 15–2, at 3.) Specifically, in his § 2254 Petition, the Court

construes Henry to raise the following claims for relief:

> **Claim One:** The Circuit Court erred when it allowed prejudicial testimony about a prior bad act by Henry. (§ 2254 Pet. 5.)[1]
>
> **Claim Two:** (a) The Commonwealth committed a *Brady*[2] violation when it failed to provide Henry with the information that Ms. Miller was still involved in prostitution up to the time of trial; (b) The Commonwealth committed a *Brady* violation when it failed to provide the information that Ms. Miller engaged in prostitution prior to her relationship with Henry; and,

---

[1] The Court employs the pagination assigned to Henry's § 2254 Petition by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations from Henry's submissions.

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

(c) The Commonwealth committed a *Brady* violation when it failed to provide the aforementioned exculpatory information about Ms. Miller in a timely manner. (*Id.* at 7.)

Claim Three: The Commonwealth failed to prove beyond a reasonable doubt the existence of an enterprise, a necessary element for a conviction of racketeering. (*Id.* at 8.)

Claim Four: Henry's right to a speedy trial was violated. (*Id.* at 10.)

Claim Five: Henry was not tried by a fair cross-section of the community. (*Id.* at 12.)

Claim Six: The Commonwealth failed to prove beyond a reasonable doubt that Henry received anything of value, a necessary element for a conviction of receiving money or earnings of a prostitute. (*Id.* at 13.)

Respondent moves to dismiss on the grounds that Claims One and Four are not cognizable on federal habeas, and that Claims Two, Three, Five, and Six are meritless. (Br. Supp. Mot. Dismiss 6–14, ECF No. 15.) Respondent provided Henry with *Roseboro*[3] notice. (ECF No. 16.) Henry has not responded to the Motion to Dismiss, but he has submitted a Motion for Leave to File a Supplemental Complaint, or in the alternative, a Motion to Hold his § 2254 Petition in Abeyance ("Motion for Stay and Abeyance," ECF No. 17). For the reasons that follow, the Motion to Dismiss (ECF No. 13) will be granted in part. Henry's Motion for Stay and Abeyance (ECF No. 17) will be denied without prejudice. Henry's Motion for an Extension of Time (ECF No. 18) will be denied as moot.

---

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. Procedural History

On October 9, 2012, Henry was named in a three-count Indictment in the Circuit Court charging him with racketeering, enticing a prostitute, and receiving money or earnings of a prostitute. Indictment 1–2, *Commonwealth v. Henry*, No. CF12000322 (Va. Cir. Ct. Oct. 9, 2012); (*see* ECF No. 15–2, at 3.) In April 2013, Henry was incarcerated at the Federal Correctional Complex ("FCC") in Coleman, Florida where he was serving a federal sentence. Writ of Habeas Corpus Ad Prosequendem 1–2, *Commonwealth v. Henry*, No. CF12000322 (Va. Cir. Ct. Apr. 8, 2013). On April 8, 2013, the Circuit Court granted the Commonwealth's petition for a Writ of Habeas Corpus Ad Prosequendem. *Id.* at 2. On July 24, 2013, Henry was transported to Alexandria, Virginia and held without bail. Commitment Order 1, *Commonwealth v. Henry*, No. CF12000322 (Va. Cir. Ct. July 24, 2013).

Henry's jury trial began in the Circuit Court on November 25, 2013. (*See* ECF No. 15–1, at 1.) On November 26, 2013, Henry was convicted in the Circuit Court of all three counts. (ECF No. 15–1, at 1–3; ECF No. 15–2, at 3.) The Circuit Court entered judgment and sentenced Henry to a total of 27 years of imprisonment, with an additional three years suspended. (ECF No. 15–2, at 1–4.) Henry appealed.

On November 14, 2014, the Court of Appeals of Virginia denied Henry's Petition for Appeal. (ECF No. 15–3, at 1.) On April 23, 2015, a three-judge panel of the Court of Appeals of Virginia denied Henry's Petition for Appeal. (ECF No. 15–4, at 1.) On January 19, 2016, the Supreme Court of Virginia refused Henry's Petition for Appeal. (ECF No. 15–5, at 1.)

On January 4, 2017, the Court received the instant § 2254 Petition. (ECF No. 1.)

On June 14, 2017, Henry submitted a petition for writ of habeas corpus to the Circuit

Court raising three additional habeas claims that are not presented in his § 2254 Petition.

(*See* ECF No. 17, at 3.) By Order entered September 1, 2017, the Circuit Court denied

Henry's state habeas petition as untimely. (ECF No. 23–1.)

## II. Constraints on Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must

demonstrate that he is "in custody in violation of the Constitution or laws or treaties of

the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty

Act of 1996 limits this Court's authority to grant relief by way of a writ of habeas corpus.

Specifically, "[s]tate court factual determinations are presumed to be correct and may be

rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228

(4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d),

a federal court may not grant a writ of habeas corpus based on any claim that was

adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not

whether a federal court believes the state court's determination was incorrect but whether

that determination was unreasonable—a substantially higher threshold." *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410

(2000)).

In Claim One, Henry argues that the Circuit Court erred by admitting prejudicial

testimony of a prior bad act by Henry. (§ 2254 Pet. 5.)[4] Claim One does not allege a

violation of the U.S. Constitution or a federal law; rather, Henry argues that the Circuit

Court erred by allowing Ms. Miller's testimony under Virginia's evidentiary rules about

prior bad acts. (*See* § 2254 Pet. 5.) Thus, Claim One is not cognizable on federal

habeas. Accordingly, Claim One will be dismissed.

### III. Challenges to the Sufficiency of the Evidence

In Claim Three, Henry challenges the sufficiency of the evidence for his

conviction of racketeering. (§ 2254 Pet. 8.) Specifically, Henry alleges that the

Commonwealth failed

> to prove the existence of an enterprise beyond a reasonable doubt.
> There was no testimony that any person other than Miller or Henry
> exercised any control over the alleged enterprise. Over defense objection,
> evidence of conduct outside of [the] indictment timeframe w[as] disclosed.
> There was no testimony from anyone who knew [Henry] prior to July 2011,
> excluding Ms. Miller.

(*Id.*)

In rejecting this claim, the Court of Appeals of Virginia relied on the following

analysis:

> "It shall be unlawful for any person employed by, or associated with,
> any enterprise to conduct or participate, directly or indirectly, in such
> enterprise through racketeering activity." [Va.] Code § 18.2–514(C).
> According to [Va.] Code 18.2–513, "'[e]nterprise' includes any of the
> following: sole proprietorship, partnership, corporation, business trust,

---

[4] Henry's § 2254 Petition provides little factual support for his claims. Therefore, the
Court construes Henry to raise the same facts underlying his claims that he raised on direct
appeal.

criminal street gang; or other group of three or more individuals associated for the purpose of criminal activity."

"[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009) (citing *United States v. Turkette*, 452 U.S. 576 (1981)). "Members of the group need not have fixed roles; different members may perform different roles at different times." *Id.* "While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." *Id.*

[Henry] argues that the Commonwealth's evidence proved that only two people, [Henry] and Ms. Miller, were "consistently involved in the alleged prostitution ring." In order for there to be an enterprise, there has to be at least three people.

The Commonwealth provided evidence that there were numerous others, besides [Henry] and Ms. Miller, involved in the enterprise. Cynthia Orr testified that she worked as a prostitute for [Henry] in the summer of 2011. There also was evidence about other prostitutes who worked with them, including JoJo Shipp, Janelle Stein, a woman named "Dee Dee," and other women whose street names were "Cream," "Kim," and "Diamond." "Although the faces in the group may have changed, there was substantial evidence of a structure within the group within which the various associates operated according to their specific function. . . . ." *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985).

The trial court did not err in denying the motion to strike because the evidence was sufficient to prove beyond a reasonable doubt that [Henry] was part of an enterprise and guilty of racketeering.

(ECF No. 15–3, at 5–6 (third and fourth alterations in original).)

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency

of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

Reviewing the evidence in the light most favorable to the Government, Henry's assertion that the Commonwealth failed to prove beyond a reasonable doubt the existence of a three-person enterprise is discredited by the record. As observed by the Court of Appeals of Virginia, the evidence at trial included testimony by Ms. Miller and Ms. Orr, who both detailed that they worked as prostitutes together and for Henry. (Nov. 25, 2013 Tr. 201; 217–18; 406.) Ms. Miller further described that other women worked as Henry's "recruitments" and prostitutes, including "Kim," "Cream," "Diamond," "Janelle," and "Dee Dee." (Nov. 25, 2013 Tr. 200–01; 217–18.) Ms. Orr also explained that she was not Henry's sole prostitute during her relationship with Henry. (Nov. 25, 2013 Tr. 402–03.) The evidence at trial supported the jury's finding that although numerous women worked for him at different times, a hierarchy of Henry as the pimp and these women as his prostitutes remained. *See Tillett,* 763 F.2d at 631. Therefore, Henry's Claim Three will be dismissed.

In Claim Six, Henry challenges the sufficiency of the evidence for his conviction of receiving money or earnings of a prostitute. (§ 2254 Pet. 13.) In rejecting this claim, the Court of Appeals of Virginia stated as follows:

> [Henry] argues that the trial court erred in denying his motion to strike because "the Commonwealth failed to prove the transfer of earnings by Ms. Miller to [Henry] during the period of the indictment in the city of Alexandria beyond a reasonable doubt."
> . . . .
> [Henry] argues that the evidence was insufficient to prove that Ms. Miller gave [Henry] money that she earned from prostitution between February 1, 2011 and August 19, 2011. [Henry] questions Ms. Miller's

testimony and whether she sufficiently identified where or when her earnings from prostitution were given to [Henry].

The Commonwealth presented Ms. Miller's testimony that she engaged in prostitution in Alexandria and gave her earnings to [Henry]. There also was photographic evidence proving that [Henry] was in Alexandria and that he held money that was earned by Ms. Miller for her acts of prostitution in Alexandria.

The jury had the opportunity to see and hear the witnesses, and it found Ms. Miller to be credible.

(ECF No. 15–3, at 10.)

As noted above, the Commonwealth's witnesses, Ms. Miller and Ms. Orr, described in extensive detail how Henry would move them around the country for purposes of having sex for money and how Henry would collect the earnings of their prostitution. (Nov. 25, 2013 Tr. 155–66; 401–08.) Thus, ample evidence of Henry's guilt of receiving money or earnings of a prostitute was presented at trial. Accordingly, Claim Six will be dismissed.

## IV. Alleged *Brady* Violations

In Claim Two, Henry alleges that the Commonwealth failed to provide exculpatory information to the defense, and that the Commonwealth failed to provide the exculpatory information in a timely enough manner. (§ 2254 Pet. 7.) Specifically, Henry alleges,

[Henry] requested all "Brady" information prior to trial, including, but not limited to, whether the complaining witnesses were still involved in prostitution, which [Henry] never received in total. Ms. Miller testified that she worked for a pimp prior to her relationship with Henry and that she was still involved with prostitution and the agents she had been working with "were well aware" of this.

(*Id.*)

In rejecting Claim Two, the Court of Appeals of Virginia stated,

[Henry] argues that the trial court erred in denying his "motion to strike" because "the Commonwealth failed to provide necessary exculpatory evidence in a timely manner."[5] [Henry] contends the Commonwealth failed to tell [Henry] that Ms. Miller worked for another pimp prior to [Henry]. [Henry] also asserts that the Commonwealth did not tell him until the morning of trial that Ms. Miller continued to work as a prostitute after her relationship with [Henry] ended.

Prior to trial, [Henry] filed a motion requesting all *Brady* information, including whether the complaining witnesses were still involved in prostitution. Prior to trial, the Commonwealth provided to [Henry] reports documenting the FBI interviews with Ms. Miller. On the morning of trial, the Commonwealth informed [Henry] that Ms. Miller continued to engage in prostitution. [Henry] moved for a mistrial because he was not provided this information earlier. The trial court denied the motion. The trial court acknowledged that [Henry] asked for the information and that the Commonwealth did not give it to him. However, the trial court held that the information went to impeachment and credibility issues and that the error "has been cured by [Henry's] cross-examination."

. . . .

There is no *Brady* violation where defense counsel knew about undisclosed exculpatory evidence "in sufficient time to make use of [it] at trial." *Read v. Virginia State Bar*, 233 Va. 560, 564, 357 S.E.2d 544, 546 (1987). *Cf. Moreno v. Commonwealth*, 10 Va. App. 408, 419, 392 S.E.2d 836, 843 (1990) (where accused receives information in time to use it effectively at trial, and is not otherwise able to demonstrate prejudice, he has not been deprived of fair trial). "This principle applies without regard to when the prosecution was or should have been 'aware of the information.'" *Commonwealth v. Tuma*, 285 Va. 629, 636, 740 S.E.2d 14, 18 (2013) (quoting *Read*, 233 at 564, 357 S.E.2d at 546).

The trial court did not err in denying the motion. The Commonwealth provided the information to [Henry] with sufficient time for him to use it and cross-examine the witnesses at trial. [Henry] argues that his pre-trial investigation and preparation would have differed if he had known the information prior to trial. However, [Henry] did not ask for a continuance once he learned of the information. The record proves that

---

[5] [Henry] made a motion for a mistrial, not a motion to strike. Throughout this part of his petition for appeal, he refers to the motion for mistrial. The Commonwealth was aware of the motion for mistrial. Given the particular circumstances here, we will consider that [Henry] simply misstated his assignment of error and base our analysis on his motion for a mistrial.

[Henry] was not prejudiced.

(ECF No. 15-3, at 3–4.)

### A. Claim 2(a)

Henry's allegation that he "never received" the information that Ms. Miller continued to prostitute up to the time of trial is belied by the record. As explained by the Court of Appeals of Virginia, Henry was provided the information that Ms. Miller was still involved in prostitution on the morning of trial, and Henry has not submitted clear and convincing evidence to rebut such a finding. *See Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citation omitted). Therefore, Henry's assertion that he "never received" from the Commonwealth the information about Ms. Miller's continued prostitution is simply not true. Accordingly, Claim 2(a) will be dismissed.

### B. Claim 2(b)

In Claim 2(b), Henry alleges that the Commonwealth committed a *Brady* violation when it failed to give his defense the information that Ms. Miller engaged in prostitution prior to meeting Henry. However, contrary to Henry's assertion, the Commonwealth did not commit a *Brady* violation because Henry's defense was provided this information— and utilized it—at trial.[6]

On direct examination, the Commonwealth called Ms. Miller as its first witness. (Nov. 25, 2013 Tr. 146–47.) Ms. Miller admitted she met Henry because "another pimp had given [Henry her] number," and although she began prostituting with this prior pimp,

---

[6] Parts 2(b) and 3(b) of Henry's Claim Two were considered on direct appeal. Thus, this Court is "obliged to give deference to [the Court of Appeals of Virginia's] decision[] . . . that the Commonwealth's failure to disclose . . . did not constitute a *Brady* violation." *Monroe v. Angelone*, 323 F.3d 286, 298 (4th Cir. 2003).

"it only lasted for a week." (Nov. 25, 2013 Tr. 154–55.) On cross-examination, defense counsel questioned Ms. Miller about how she met a prior pimp named "Sugaroo," how "Sugaroo" explained to Ms. Miller that she could make money off of sex, and how Ms. Miller would give "Sugaroo" the money she made from having sex. (Nov. 25, 2013 Tr. 322–25.) Further, in defense counsel's closing arguments, counsel re-raised Ms. Miller's involvement in prostitution prior to meeting Henry. (Nov. 26, 2013 Tr. 181–85.)

As the Fourth Circuit has explained, "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985) (citation omitted). The allegedly withheld and exculpatory information that Ms. Miller engaged in prostitution prior to meeting Henry was provided to Henry during the direct-examination of Ms. Miller. Defense counsel then utilized this information on both cross-examination and in counsel's closing arguments. Therefore, a *Brady* violation did not occur. *See id.* Accordingly, the Court of Appeals of Virginia's determination of the same was not unreasonable and Claim 2(b) will be dismissed.

### C. Claim 2(c)

Henry's claim that the Commonwealth failed to provide the information about Ms. Miller's prior and continued prostitution in a timely manner is likewise without merit because Henry used the information at trial. The jurors heard from Ms. Miller about her prior and continued prostitution on direct-examination (Nov. 25, 2013 Tr. 154–55; 310), cross-examination (Nov. 25, 2013 Tr. 322–25; 376), and in the defense's closing arguments. (Nov. 26, 2013 Tr. 181–85.) Henry therefore cannot demonstrate any

11

probability of a different result had he learned of Ms. Miller's history of prostitution at an earlier date. *See United States v. Bodkins*, 274 F. App'x 294, 300 (4th Cir. 2008).

Accordingly, the Court of Appeals of Virginia's holding that no *Brady* violation occurred is not unreasonable. Claim 2(c) will be dismissed.

## V. Alleged Violation of Henry's Right to a Speedy Trial

In Claim Four, Henry alleges a violation of his right to a speedy trial. (§ 2254 Pet. 10.) The Court of Appeals of Virginia provided the following accurate summary of the law and facts with respect to this claim:

> On October 9, 2012, a grand jury directly indicted [Henry] on charges of racketeering, [enticing a prostitute], and [receiving the funds of a prostitute]. In December 2012, [Henry] was sentenced to prison in the United States District Court for the Middle District of Florida. By letter dated March 23, 2013, the classification officer advised the Commonwealth's Attorney in Alexandria that [Henry] wished to dispose of the Virginia charges and requested that "action be taken under Article III of the [Interstate Agreement on Detainers ("IAD")]." This letter was not received until June 14, 2013. In April 2013, the Commonwealth filed a Petition for a Writ of Habeas Corpus Ad Prosequendem, and the trial court entered an order on April 8, 2013 directing the warden to release [Henry] to the Virginia authorities "on or before June 1st, 2013." On May 6, 2013, the Commonwealth filed a Request for Temporary Custody pursuant to the [IAD]. On July 24, 2013, [Henry] was transported to Alexandria, and on July 25, 2013, he was advised of his charges and appointed counsel.
>
> On August 2, 2013, the trial court continued the case until August 15, 2013 in order to set the trial date. On August 15, 2013, the trial court continued the case to September 5, 2013 for a motion for jury election and scheduled a jury trial on October 1, 2013. On September 5, 2013, the trial court continued the case to September 19, 2013 for a motion for jury election and noted that a jury trial was scheduled for October 1, 2013. On September 19, 2013, the trial court continued the jury trial to November 25, 26, and 27, 2013. [Henry] admits that his counsel agreed to the November trial dates. On October 4, 2013, [Henry] filed his motion to dismiss the indictments for violations of speedy trial and the IAD. The Commonwealth filed a motion in opposition. On October 10, 2013, the trial court heard argument[s] and denied [Henry's] motion.

> The time limitations of the IAD vary depending on who initiates the prisoner's transfer for trial in the receiving state. Under Article IV, if the receiving state requests custody of the prisoner, the receiving state must begin prosecution within 120 days from the day the prisoner arrives in the receiving state. Under Article III, if the prisoner requests final disposition of his detainer and complies with other provisions of the IAD, prosecution in the receiving state must commence within 180 days from the date the prisoner gives proper notice.

*Yiaadey v. Commonwealth*, 29 Va. App. 534, 536–37, 513 S.E.2d 446, 447–48 (1999).

> [Henry] requested disposition of the charges. The Commonwealth received his request on June 14, 2013. Since [Henry's] trial began on November 25, 2013, he was [tried] within the 180 days as required under Article III of the IAD.

> [Henry] further argues that pursuant to Article IV of the IAD, he was supposed to be tried within 120 days. [Henry] contends the Commonwealth requested custody of [Henry] when it sent the Writ of Habeas Corpus Ad Prosequendem. However, Writs of Habeas Corpus Ad Prosequendem are not considered detainers within the meaning of the IAD. *United States v. Mauro*, 436 U.S. 340, 349, 361 (1978); *see also Jiron-Garcia v. Commonwealth*, 48 Va. App. 638, 633 S.E.2d 744 (2006). Therefore, Article IV does not apply.

> Lastly, we note that [Henry] agreed to the trial date. In *New York v. Hill*, 528 U.S. 110 (2000), the Supreme Court of the United States held that defendant's counsel could waive defendant's speedy trial rights under the IAD if she agreed to a court date outside of the time deadline. Since [Henry's] counsel agreed to the November 25, 2013 court date, [Henry's] speedy trial rights were waived.

(ECF No. 15–3, at 6–7.)

In light of his arguments on direct appeal, the Court construes Henry to allege a violation of Article III of the IAD.[7] Henry asserts that he "initiated the process while

---

[7] On direct appeal, Henry also alleged violations of his state statutory right to a speedy trial under Va. Code Ann. § 19.2–243. However, as previously explained, federal habeas relief is unavailable for violations of state law alone. 28 U.S.C. § 2254(a). Therefore, to the extent that Henry claims that his Virginia statutory right to a speedy trial was violated, his claim is not cognizable on federal habeas.

housed at Coleman-USP-1 of disposition of pending charges in the City of Alexandria, Virginia [o]n [February 2, 2013], however, [Henry] didn't go to trial until [November 25, 2013]." (§ 2254 Pet. 10.)

The Fourth Circuit has held that absent a showing of prejudice, claims under the IAD are not cognizable on federal habeas review. *Kerr v. Finkbeiner*, 757 F.2d 604, 607 (4th Cir. 1985). Further, for purposes of determining the date a prisoner initiates his IAD request, the date on which the request was actually delivered to the prosecutor and court of jurisdiction governs, not the date that the prisoner transmitted his IAD request to prison authorities. *Fex v. Michigan*, 507 U.S. 43, 52 (1993).

The Court of Appeals of Virginia found that the Alexandria Commonwealth Attorney's Office received Henry's letter requesting the disposal of his Virginia charges on June 14, 2013, and therefore, Article III of the IAD applied. The Commonwealth then had 180 days from June 14, 2013 to try Henry. *See Fex*, 507 U.S. at 52. Henry's trial commenced on November 25, 2013—164 days after the Alexandria Commonwealth Attorney's Office received Henry's request for disposition of his Alexandria charges. Henry was tried within the 180-day timeframe demanded by Article III of the IAD and thus was not prejudiced. *See Kerr*, 757 F.2d at 607 (holding that a habeas petitioner had not demonstrated prejudice even though he was tried past the 180-day time provision in Article III of the IAD). Therefore, Henry's claim that the Commonwealth violated his right to a speedy trial under the IAD is not cognizable on federal habeas. *Id.* Accordingly, Claim Four will be dismissed.

## VI. Alleged Violation of the Sixth Amendment

In Claim Five, Henry alleges that he was not tried by a fair cross-section of the community in violation of the Sixth Amendment.[8] (§ 2254 Pet. 12.) On this issue, the Court of Appeals of Virginia stated:

> [Henry] argues that the trial court erred in denying his motion to empanel a new venire because he "was denied his constitutional right to a jury composed of a fair cross-section of the community." [Henry] is black, and he was convicted by an all-white jury. There were thirty-two members of the venire. All were white, except for Juror 31 who was black. [Henry] argues that African-Americans were under-represented in his venire and that the venire did not represent a fair cross-section of the community.
>
>> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
>
> *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Simpson v. Commonwealth*, 20 Va. App. 174, 177–78, 455 S.E.2d 749, 751 (1995).
>
> [Henry] met the first requirement, since blacks are a "distinctive" group in the community. *Simpson*, 20 Va. App. at 178, 455 S.E.2d at 751. [Henry] stated that according to 2010 census data for Alexandria, 22.3% of those responding listed themselves as black or African-American. He argues that African-Americans were under-represented in his venire, since only one person was black. [Henry] then cites one circuit court case in which the trial court dismissed a jury because there was an all-white venire and a black defendant. [Henry] acknowledges that the jury commissioners use random selection techniques to create a master jury list.
>
>> The Supreme Court has consistently adhered to the view that there is no requirement that a petit jury actually chosen must mirror the racial balance of the community. Further, no

---

[8] Under the Sixth Amendment, a defendant has the right to be tried "by an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Supreme Court has interpreted this provision to mean that the venire from which a criminal defendant's jury is chosen must be selected from a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 535–36 (1975). Therefore, the Court construes Henry to raise a Sixth Amendment claim.

litigant is entitled to a jury of any particular composition. All that is required is a fair selection system which does not systematically exclude any distinctive group in the community. *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). In order to make out a prima facie case of systematic exclusion, a litigant must show consistent under-representation of a distinctive group on juries in the community over a period of time. Such under-representation in a particular case is not sufficient. *See Castaneda v. Partida*, 430 U.S. 482, 494 (1977).

*Watkins v. Commonwealth*, 238 Va. 341, 347, 385 S.E.2d 50, 53 (1989).

[Henry] cited one instance in which the trial court dismissed a jury because of an all-white venire. [Henry] did not prove that there was a "consistent" under-representation of blacks on juries in Alexandria. He also argued that African-Americans are under-represented in the voter registration lists and driver's license lists from which the jury commissioners select names for the master jury list. However, as [Henry] notes, the voter registration lists and driver's license lists are not the only sources of names from which the jury commissioners derive their potential jurors. They also may use "city and county directories, telephone books, personal property tax rolls, and other such lists as may be designated and approved by the chief judge of the circuit. . . ." [Va.] Code § 8.01–345. [Henry] failed to prove that Alexandria did not use a fair selection system and that African-Americans were systematically excluded from the master jury list.

Accordingly, the trial court did not err in denying [Henry's] motion because the jury was a fair cross-section of the community.

(ECF No. 15–3, at 8–9.)

The Court of Appeals of Virginia correctly determined that Henry failed to establish the second and third elements of the *Duren* test. Post *Duren*, the Fourth Circuit has held "that use of current voter registration lists as the source for a jury pool from which random selection of jurors is made presumptively provides a fair cross-section, even if minorities are underrepresented on those lists, as long as there is no affirmative discrimination in registration." *United States v. Lewis*, 10 F.3d 1086, 1090 (4th Cir. 1993) (citing *United States v. Cecil*, 836 F.2d 1431 (4th Cir. 1988)). The Fourth Circuit

has conditioned this presumption on a finding that "the disparity 'between the proportion of eligible whites selected for master jury wheel and proportion of eligible minority persons selected'" does not exceed twenty percent. *Id.* (quoting *Foster v. Sparks*, 506 F.2d 805, 818 (5th Cir. 1975)).

Venires in Alexandria are chosen from a master jury list created by jury commissioners. Va. Code Ann. § 8.01–345 (West 2018). To create the master jury list, the jury commissioners "utilize random selection techniques, either manual, mechanical or electronic, using a current voter registration list and, where feasible, a list of persons issued a driver's license[,] . . . city or county directories, telephone books, personal property tax rolls, and other such lists . . . ." *Id.*[9]

In Henry's Petition for Appeal, he did not allege that Alexandria's master jury lists indicate a disparity between eligible white voters and eligible African-American voters in Alexandria that is greater than twenty percent, or that there is affirmative discrimination in voter registration. Rather, Henry attempted to compare the representation of American-American registered voters with white registered voters in the Commonwealth of Virginia as a whole. *See* Petition for Appeal 28, *Henry v. Commonwealth*, No. 549–14–4, at 1 (Va. Ct. App. filed June 2, 2015). However, the "community" to be analyzed under *Duren* is the City of Alexandria, rather than the Commonwealth. *See United States v. Andrews*, No. 1:12CR100–1, 2014 WL 6841231, at *3 (N.D. W.Va. Dec. 3, 2014)

---

[9] In *United States v. Anthony*, the Fourth Circuit "looked favorably on a district's use of the list of licensed drivers because it was 'a direct attempt to increase the number of African-Americans in the jury venire.'" *United States v. Andrews*, No. 1:12CR100–1, 2014 WL 6841231, at *4 (N.D. W.Va. Dec. 3, 2014) (quoting *United States v. Anthony*, 138 F. App'x 591, 594 (4th Cir. 2005)).

(citation omitted). Further, as the Court of Appeals of Virginia explained, voter registration lists are not solely from where Alexandria collects its venires. (*See* ECF No. 15–3, at 9.) Alexandria selects its venires from a master list created by voter registration lists, and "where feasible," driver's license registrant lists, city directories, telephone books, personal property tax rolls, and other such public records. Va. Code Ann. § 8.01–345 (West 2018). Thus, Henry fails to establish *Duren*'s second prong.

Additionally, Henry fails to establish systematic exclusion as required by *Duren*'s third prong. Systematic exclusion is "[t]he essence of a 'fair-cross-section' claim." *Lockhart v. McCree*, 476 U.S. 162, 174 (1986) (citation omitted). Exclusion of a distinctive group is systematic when it is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366. "However, such systematic exclusion must be proven; it will not be presumed." *United States v. Espinoza*, 641 F.2d 153, 168 (4th Cir. 1981) (citations omitted). The Fourth Circuit has recognized that "merely showing statistical underrepresentation, without evidence of exclusionary or discriminatory practices, [is] insufficient to establish a prima facie case" of systematic exclusion. *United States v. Kellam*, 498 F. Supp. 2d 875, 882 (W.D. Va. 2007) (citing *Cecil*, 836 F.2d at 1446), *aff'd*, 568 F.3d 125 (4th Cir. 2009).

In his Petition for Appeal, Henry argued that, "[t]he selective utilization of lists in which black citizens are underrepresented has led to the systematic exclusion of black citizens from the master jury list." Petition for Appeal 29, *Henry v. Commonwealth*, No. 549–14–4, at 1 (Va. Ct. App. filed June 2, 2015). Henry pointed to—as he does in his § 2254 Petition—one instance in which the Circuit Court dismissed a jury because of

an all-white venire. *Id.* at 27. However, Henry "has not pointed to any specific *component* of [Alexandria's] jury selection process that warrants a finding that it systematically excludes African-Americans." *Andrews*, 2014 WL 6841231, at *4 (emphasis added). Essentially, Henry argues that the Commonwealth's use of various public records constitutes systematic exclusion because those very records underrepresent African-Americans. But Henry neither explains how those lists systematically exclude African-Americans nor argues affirmative discrimination in the creation of those lists. Henry instead requests that this Court presume that the City of Alexandria systematically excludes African-American citizens from its venires by including venire men and women listed in public records. The Court may not do so. *See Espinoza*, 641 F.2d at 168; *Kellam*, 498 F. Supp. 2d at 882. The City of Alexandria employs a robust method of selecting its venires, and thus the Court of Appeals of Virginia's determination that Henry was tried by a fair-cross-section of his community is not an unreasonable interpretation of current *Duren* jurisprudence. *See United States v. Spicer*, No. 1:15CR46, 2016 WL 447503, at *5 (N.D. W.Va. Feb. 4, 2016). Therefore, Claim Five will be dismissed.

## VII. Henry's Motion for Stay and Abeyance

In his Motion for Stay and Abeyance, Henry explains that he filed a state habeas petition on June 14, 2017, raising three claims that he did not raise in his § 2254 Petition. (ECF No. 17, at 3.) Henry requests leave to supplement his § 2254 Petition and that this Court hold in abeyance his petition pending the resolution of his state habeas proceeding.

(*Id.* at 2–4.) Specifically, Henry requests leave to add the following claims:[10]

Claim Seven: "Trial counsel provided ineffective assistance by allowing the [Commonwealth's] Attorney to vouch for a cooperating witness in the closing argument thereby infringing upon a fair trial under the Sixth Amendment." (*Id.* at 3.)

Claim Eight: "[Trial counsel] provided ineffective assistance of counsel by failing to object to the Court's erroneous jury instruction on the conduct element of the RICO offense." (*Id.* at 3–4.)

Claim Nine: "[The] Commonwealth violated Mr. Henry's Fifth [and] Fourteenth Amendment Due Process right[s] by violating the trial court sequester order." (*Id.* at 4.)

Respondent contends that Henry's Motion for Stay and Abeyance should be denied because by Order entered on September 1, 2017, the Circuit Court dismissed Henry's state habeas petition as untimely (ECF No. 23–1), and thus, Henry has procedurally defaulted these additional claims. (ECF No. 23, at 5–8.) Respondent further contends that the federal statute of limitations bars Henry's additional habeas claims. (*Id.* at 3–5.)

In response, Henry asserts that he was unable to exhaust his state court remedies for his additional habeas claims because he never received the Circuit Court's Order denying his petition for a writ of habeas corpus as untimely. (ECF No. 24, at 2–3.) Henry further asserts that, should he be permitted to supplement his § 2254 Petition, his additional habeas claims are subject to equitable tolling of the limitations period or belated commencement under 28 U.S.C. § 2244(d)(1)(B). (*Id.* at 5.) In support of his argument, Henry has submitted a letter from his unit manager at FCC Hazelton that

---

[10] The Court notes that Henry has not provided any facts underlying these claims. (*See* ECF No. 17, at 3–4.) As such, these grounds are subject to summary dismissal because they "state[] only bald legal conclusions with no supporting factual allegations." *Sanders v. United States*, 373 U.S. 1, 19 (1963). Nevertheless, as set forth herein, the Court will allow Henry an opportunity to provide the factual basis for his Claims Seven through Nine.

explains that Henry "has a CD for the courts in his file" that he was been unable to access since December 2016. (ECF No. 24–2, at 2.)

By Memorandum Order entered on January 3, 2018, the Court directed additional briefing from Respondent. (ECF No. 25.) On January 16, 2018, the Court received Respondent's additional briefing. (ECF No. 26.) Respondent concedes that Henry did not receive the Circuit Court's Order denying his state habeas petition as untimely, but argues that Henry's claims are still untimely under the federal statute of limitations. (ECF No. 26, at 2–6.) However, Respondent has not adequately addressed whether Henry is entitled to belated commencement under 28 U.S.C. § 2244(d)(1)(B).

At this juncture, whether Henry is entitled to belated commencement of the federal limitations period or whether Henry's additional habeas claims have merit is not apparent from the record. Accordingly, the Motion for Stay and Abeyance (ECF No. 17) will be denied without prejudice. However, should Henry still seek consideration of his additional habeas claims, he will be directed to provide the Court with additional briefing that details the facts underlying his Claims Seven through Nine within twenty (20) days of the date of entry hereof. Henry has also submitted a Motion for an Extension of Time wherein he requests additional time to supplement his Motion for Stay and Abeyance. (ECF No. 18.) The Motion (ECF No. 18) will be denied as moot.

Respondent will be directed to respond to Henry's additional briefing within fifty (50) days of the date of entry hereof. Respondent is free to raise any procedural defenses with respect to these claims, but is required to address the merits of Claims Seven through Nine.

## VIII. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 13) will be granted in part and Claims One through Six will be dismissed. The Motion for Stay and Abeyance (ECF No. 17) will be denied without prejudice. The Motion for an Extension of Time (ECF No. 18) will be denied as moot. Should Henry wish to pursue Claims Seven through Nine, he must file a motion to amend that includes any supporting facts for these claims within twenty (20) days of the date of entry hereof. Respondent will be directed to respond to Henry's briefing within fifty (50) days of the date of entry hereof. If Henry fails to file anything further within twenty (20) days of the date of entry hereof, the Court will dismiss the action. *See* Fed. R. Civ. P. 41(b).

An appropriate Order shall issue.

It is so ORDERED.

_____/s/_____
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Feb. 23 2018
Richmond, Virginia